UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ELEANOR BISHOP,

    Plaintiff,

v.                                                                Case No. 8:08-cv-2170-T-24 MAP

ALLIED VAN LINES, INC.,

    Defendant.
_____/

**ORDER**

The Court now considers Defendant Allied Van Lines' motion for summary judgment (Doc. 23), which Plaintiff Eleanor Bishop opposes. (Doc. 26.)

**BACKGROUND**

In June 2006, Eleanor Bishop, a 57-year-old retired real estate broker, decided to move from Nashville, Tennessee to Longboat Key, Florida. Because she was remodeling her new home on Longboat Key, Bishop's move involved two steps. First, she moved her furniture, which included several antiques pieces, into storage at a warehouse in Nashville. Then, about a year and three months later in November 2007, she moved her furniture from the warehouse to her newly-remodeled home in Longboat Key.

Bishop hired Ted R. Sanders Moving and Warehouse, Inc. of Nashville ("Sanders Moving") to store and then to transport her furniture to Florida. (Compl. ¶ 5; Doc. 1-3 at 6.) Bishop testified that she hired Sanders Moving because of its affiliation with Allied, which

enjoyed a good reputation. (Doc. 25, Bishop Dep. at 35.) In fact, Bishop testified that she believed she had contracted with both Sanders Moving and Allied for the move. Id. Sanders Moving, in fact, represented itself as Allied's agent from the start. It gave Bishop an estimate that listed Sanders Moving as the agent and Allied as the carrier for her move. (Ex. C, Doc. 26-2 at 10.) Sanders Moving also wrote Bishop a letter on letterhead that included Allied's logo and the words, "Agent for Allied Van Lines." (Doc. 1-3 at 5.)

On July 24 and 25, 2006, Sanders Moving transported Bishop's furniture from her Nashville house into a nearby warehouse that it owned. (Sanders Aff. ¶¶ 4-6.) According to an inventory list filled out by two workers, Bishop's furniture had only minor nicks and scratches on it. (Inventory List, Doc. 26-3 at 7-8.) Bishop also testified that her furniture looked to be in good shape. To keep it that way, Bishop paid for warehouse space that was supposed to be air conditioned. (Doc. 24-5, Sanders Aff. ¶ 3.) However, except for one visit to the warehouse shortly after the initial move, Bishop never checked on her furniture in the warehouse or verified that the warehouse's air-conditioning was working. (Bishop Dep. at 22.) Apparently, it wasn't. In the year and three months that Bishop's furniture remained in storage, the air conditioning unit may have broken. Water from the unit may have leaked onto Bishop's furniture, including a nineteenth century polychrome cabinet, an inlaid walnut writing desk, and a dining room sideboard made by George Hepplewhite in 1781. (Doc. 24-2.)

Although Bishop testified that she does not know exactly how or when the movers damaged her goods (Bishop Dep. at 94), Bishop acknowledged that she later told a furniture appraiser that the air conditioning unit at the warehouse had broken, leaking water into the area

where her furniture was stored.[1] (Doc. 27-3 ¶ 2.) Bishop told a second appraiser that exposure to extreme heat, humidity and moisture probably accounted for the damage to one of her cabinets. Id. ¶ 4. In a report, appraiser Gene McCall wrote that the furniture showed signs of exposure to high heat and humidity, and several pieces showed signs of water damage. (Doc. 24-2.)

In the fall of 2007, after her Florida home had been remodeled, Bishop decided to move her furniture out of storage. (Doc. 26-2, Bishop Aff. ¶ 3.) She called Ted Sanders of Sanders Moving to initiate the move. While Bishop remained in Florida, workers from Allied arrived at the warehouse in Nashville on November 8, 2007 to load her belongings. Allied driver Agim Balla filled out an "Inventory Exception Receipt" form that listed damage to approximately 17 pieces of furniture. (Doc. 24-6, Marlowe Aff. ¶¶ 4-6.) In addition, the driver noted on another form that she did not receive an end table, which should have been in the warehouse, according to a household goods inventory created in 2006. (Marlowe Aff. ¶ 3.) Id. Allied, however, did not tell Bishop about the problems it discovered. In fact, the "Inventory Exception Receipt" form is marked in bold and capital letters: **DO NOT GIVE TO CUSTOMER**.[2] (Doc. 24-6 at 6.)

On November 10, 2007 at approximately 1 p.m., Allied's movers arrived in Longboat Key with her furniture. (Doc. 24-6 at 7; Bishop Dep. at 61.) According to Bishop, the movers

---

[1] Bishop also accused Ted Sanders, owner of Ted R. Sanders Moving and Warehouse Inc., of damaging her furniture by exposing it to extreme heat and moisture. (Sanders Aff. ¶ 10.) Sanders denied the accusation. Id.

[2] Bishop did not see the document until her deposition in this lawsuit on May 7, 2009. (Bishop Dep. at 71.)

3

had two more jobs that day in Tampa, more than an hour away. (Bishop Dep. at 61.) Because of the two other jobs, Bishop said the movers raced to unload her furniture in two hours. In the rush, Bishop, who lives alone, said she did not see the damage to many pieces of furniture.[3] Id. at 60-63. However, on the customer check-off list, Bishop noted that her end table was missing. (Doc. 26-3 at 9.) She said she did not detect other damage until she unpacked boxes much later. (Bishop Dep. at 63.)

After unpacking, Bishop called Mike Sanders of Sanders Moving about the damaged items, and Mike Sanders sent her an Allied claims form to fill out. Id. at 63-64. She completed the form on December 10, 2007, listing 11 missing or damaged items, including ranges of items and categories of items. One item, for example, is listed as three boxes.[4] (Doc. 26-3 at 10.) Under the column "Replacement Cost," she wrote next to several items, "To be determined." Next to a dollar sign in the box "Total Claimed," she also wrote, "To be determined." Id.

In September 2008, Bishop filed a complaint against Allied in state court in Sarasota County that alleged that Allied and its agent damaged her household furniture and goods during the move. Upon removal to federal court, the Court construed Bishop's lawsuit to be a claim under 49 U.S.C. § 14706, known as the Carmack Amendment to the Interstate Commerce Act,

---

[3] Bishop offered another explanation for the oversight. As movers brought in boxes, they called off box numbers and Bishop checked the box numbers off an inventory list. However, Bishop said, one of the movers, who did not know how to read, called off the wrong numbers. The confusion over the wrong numbers prevented Bishop from noticing more damage. (Bishop Dep. at 64-68.)

[4] The Court cannot read Bishop's handwriting on the Statement of Claim well; the quality of the copy filed with the Court is poor. (Doc. 26-3 at 10.) However, one damaged item is listed as number "184+." This apparently refers to number 184, which is an 1855 armoire and a 1900 small chest, plus other unspecified items. Another item appears to contain a range of items such as "171 – [ineligible]." Id.

4

which "creates a national scheme of carrier liability for goods damaged or lost during interstate shipment under a valid bill of lading." Molloy v. Allied Van Lines, Inc., 267 F. Supp. 2d 1246, 1251 (M.D. Fla. 2003). (Doc. 6.)

## **STANDARD OF REVIEW**

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court must draw all inferences from the evidence in the light most favorable to the non-movant—in this case, Bishop—and resolve all reasonable doubts in that party's favor. Porter v. Ray, 461 F.3d 1315, 1320 (11th Cir. 2006). Therefore, Allied bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Id. When Allied has discharged its burden, Bishop must then go beyond the pleadings, and by her own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue of material fact for trial. Id.

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In determining whether there is a "genuine" issue, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-52. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-50. "The mere existence of a scintilla of evidence in

5

support of the Plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the Plaintiff." Id. at 252.

Where the Court cannot grant summary judgment on the entire case, Rule 56(d) permits the Court to enter a partial summary judgment in order to narrow the issues for trial.

## ANALYSIS

**I.     Plaintiff Eleanor Bishop has raised genuine issues of material fact sufficient to make a prima facie case under the Carmack Amendment**

In order to establish a prima face case against Allied under the Carmack Amendment, Bishop must offer proof by a preponderance of evidence that (1) Bishop's goods were delivered to the carrier in good condition, (2) Bishop's goods arrived in damaged condition, and (3) the damaged condition resulted in the specified amount of damage. Fine Foliage of Fla., Inc. v. Bowman Transp., Inc., 901 F.2d 1034, 1037 (11th Cir. 1990) (internal citations and quotations omitted). See also Mo. Pac. R.R. Co. v. Elmore & Stahl, 377 U.S. 134 (1964) ("[T]he shipper establishes his prima facie case when he shows delivery in good condition, arrival in damaged condition, and the amount of damages.")

Part of the Carmack Amendment's purpose is "to relieve shippers of the burden of searching out a particular negligent carrier from among the often numerous carriers handling an interstate shipment of goods." Fine Foliage of Fla., Inc., 901 F.2d at 1037. Therefore, the law makes the carrier that delivers the property liable to the person entitled to relief under the bill of lading. 49 U.S.C. §14706(a)(1). The Carmack Amendment also holds the delivering carrier liable for the "actual loss or injury to the property" caused by either the receiving carrier, the

6

delivering carrier, or under certain conditions, another carrier in the chain of shipping.[5] Id.

In its motion for summary judgment, Allied argues that Bishop failed to offer sufficient proof under the summary judgment standard of the first element of its prima facie case—namely, that Bishop's goods were delivered to Allied in good condition. Allied argues that it did not receive Bishop's goods until November 8, 2007, when Allied workers arrived at the Sanders Moving warehouse in Nashville. On that day, Allied's driver documented substantial damage to Bishop's furniture in an "Inventory Exception Receipt" and also documented a missing end table.

In her response, Bishop counters that she delivered her goods to Allied on July 24, 2006, when workers from Sanders Moving arrived at her Nashville home to pack her furniture. On that date, Bishop testified that her belongings were in good condition. Workers also documented only minor nicks and scratches to furniture. Because workers packed Bishop's belongings themselves, Bishop must only present "reliable and substantial circumstantial evidence" of the good condition of her furniture.[6] A.I.G. Uruguay Compania de Seguros v. AAA Cooper Transp.,

---

[5] Allied argued that because Bishop "cannot offer any proof of what Allied did or did not do (as Sanders' alleged principal)," she cannot make a prima face case against Allied. (Doc. 23 ¶ 41.) This argument misconceives Bishop's burden under the Carmack Amendment. To establish liability, Bishop only needs to prove that her goods were delivered in good condition and returned in damaged condition.

[6] Depending on whether a shipper like Bishop delivered goods to a carrier like Allied in a sealed or unsealed container, the shipper must meet different standards of proof. A.I.G. Uruguay Compania de Seguros v. AAA Cooper Transp., 334 F.3d 997, 1003-07 (11th Cir. 2003). A shipper must prove the contents of a sealed container by direct evidence. Id. at 1006-07. But:

> When the shipment at issue is not a sealed container, then the carrier has the initial burden of informing itself of the condition of the goods received. Because the carrier has the ability before and during shipment to ascertain for itself the nature and condition of the shipment, we do not require heightened proof.

334 F.3d 997, 1007 (11th Cir. 2003). "[A] recitation of good condition and contents on the bill of lading may suffice." Id. at 1004. Thus, Bishop argues that she offered sufficient evidence for a prima facie case that Allied violated the Carmack Amendment and should be liable to her for damages.

### *1. Bishop Can Establish that Sanders Moving Acted as Allied's Agent*

In its motion for summary judgment, Allied predicted that Bishop would argue in response that because Sanders Moving acted as Allied's agent, Allied should be liable if Sanders Moving damaged Bishop's goods at its warehouse. Allied should not be surprised that Bishop made this argument since Allied made the same argument earlier in this case. In December 2008, Allied filed a third-party complaint against Sanders Moving, which it later dismissed, in which Allied stated: "A detailed agency agreement governs Allied's business relationship with Sanders, and was in full force and effect at all times material." (Doc. 11 ¶ 12.) Allied attached to the third-party complaint a copy of the signature page of the contract with Sanders Moving marked in bold: **AGENCY CONTRACT**. (Ex. C, Doc. 11-4.) Allied also attached detailed regulations that control the conduct of agents like Sanders Moving.[7] (Ex. D, Doc. 11-5.) According to Allied in its third-party complaint, the agency contract and regulations required that Sanders Moving purchase insurance and indemnify Allied for loss or damage to Bishop's

---

Id. at 1003-04 (internal citations and quotations omitted).

[7] Although neither party referenced these exhibits in the motion for summary judgment or the response, "[t]he court and the parties have great flexibility with regard to the evidence that may be used on a Rule 56 proceeding." Charles Alan Wright, et al, 10A Fed. Prac. & Proc. Civ. § 2721 (3d ed. 2009). "The court may consider any material that would be admissible or usable at trial." Id. Rule 56 specifically refers to the "pleadings, the discovery and disclosure materials *on file*." Fed. R. Civ. P. 56(c) (emphasis added).

goods while in storage. (Doc. 11 ¶ 13.) Having raised these facts to paint Sanders Moving as its agent earlier in the case, Allied cannot convince the Court now that Sanders acted on its own, without Allied's consent, when Sanders Moving held itself out as Allied's agent. Having opened this door, Allied cannot now close it.

Even if Allied had not made these allegations, the Court would find that Bishop's case survives summary judgment. Bishop has offered sufficient evidence to create a jury question as to whether Sanders Moving acted as Allied's agent.[8] Although federal statutory law governs a claim under the Carmack Amendment, "common-law principles give content to the federal rule." Hiram Walker & Sons, Inc. v. Kirk Line, 877 F.2d 1508, 1512 (11th Cir. 1989). "When applying agency principles to federal statutes, 'the Restatement (Second) of Agency . . . is a useful beginning point for a discussion of general agency principles.'" Arriaga v. Fla. Pac. Farms, LLC, 305 F.3d 1228, 1245 (11th Cir. 2002) (internal citations omitted).

"Agency is defined as 'the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act.'" United States v. Schaltenbrand, 930 F.2d 1554, 1560 (11th Cir. 1991) (citing Restatement (Second) of Agency § 1(1) (1958)). "'[A]n essential characteristic of an agency is the power of the agent to commit his principal to business relationships with third parties. . . .'" Id. (internal citations and quotations omitted). In order to establish agency, an agent can act with actual authority of the principal or with apparent authority. "An agent has 'actual' authority to bind the principal where the principal has

---

[8] "T]he existence of an agency relationship is an issue of fact. . . ." Sun Bank, N.A. v. E.F. Hutton & Co., Inc., 926 F.2d 1030, 1036 (11th Cir. 1991).

specifically granted the agent the power to do so. . . . An agent has 'apparent' authority to bind the principal where the principal has held out the agent as having such authority or has permitted the agent to represent that he has such authority." Id. (internal citations omitted).

Bishop can make a case that both types of authority existed in this case. Sanders Moving committed Allied to a business relationship with Bishop when it held itself out as Allied's agent and then contracted to store and transport Bishop's goods to Florida. The "detailed agency agreement" between the two companies, as well as the regulations that governed the conduct of Sanders Moving, show that Allied granted Sanders Moving the power to bind it to a business relationship with Bishop. Even without those documents, the circumstances of Bishop's move show that Allied granted Sanders Moving the power to bind it into a business relationship with Bishop. When Bishop decided in 2007 to move her belongings from storage to Longboat Key, she did not need to contact Allied separately to complete the second leg of the move. She simply called Ted Sanders and asked him to complete the move. Without executing a separate contract with her, Allied loaded her goods at the Nashville warehouse and moved them to Florida.

Bishop can also show that Sanders Moving acted with apparent authority when it held itself out to Bishop as Allied's agent. When Bishop first sought an estimate of the move, she received letters from Sanders Moving with Allied's logo on it. The letters also referred to Sanders Moving as an "agent for Allied Van Lines." Bishop relied on those representations. She testified that she hired Sanders Moving because of Allied's reputation. The Court agrees with Allied that Bishop's subjective impression and Sanders Moving's representations to her alone do not control this issue. Instead, "'[i]t is the manifestations of the alleged principal and agent as between themselves that is decisive and not the appearance to a third party. . . ." United

Van Lines, LLC v. Marks, 404 F. Supp. 2d 954, 960 (S.D. Tex. 2005) (internal citations omitted). However, Allied's manifestations to Sanders Moving provide sufficient evidence of agency. On the Allied bill of lading, Allied listed Sanders Moving as "Allied Servicing Agents." (Doc. 26-3 at 6.) The form filled out at the Nashville warehouse by Allied's driver also listed Sanders Moving as Allied's agent. (Doc. 26-3 at 10.) The agency contract also demonstrated that Allied considered Sanders Moving to be its agent.

Because Bishop can demonstrate genuine issues of material fact to establish a prima facie case under the Carmack Amendment, the Court denies Allied's motion for summary judgment.

## II. Plaintiff's lawsuit is not limited to eight items listed in the Statement of the Claim

As an alternative to granting summary judgment, Allied asks the Court to enter partial summary judgment by limiting Bishop's claim to eight items that Allied says Bishop included in her Statement of Claim on December 10, 2007 after she discovered the damage. Allied asserts that Bishop's damages have ballooned from eight items listed on her Statement of the Claim to 23 damaged and lost items listed in Bishop's interrogatory answers in 2009.

The Court is not so certain that Bishop's claim has expanded as much as Allied claims. Allied said Bishop only listed on the Statement of Claim eight damaged items. The Court counted 11 missing and damaged items, which included a range of items and three boxes of damaged goods. (Each box presumably could include more than one item.) On March 9, 2009, in Bishop's answers to interrogatories, she listed 14 damaged items and nine categories of missing items, which include multiple items per category. For example, one category is listed as six missing wine goblets with gold trim. (Ex. E, Doc. 26-2 at 14-20.)

Regardless, the Court agrees that "the bill of lading, required to be issued by the initial

11

carrier upon an interstate shipment, 'governs the entire transportation, and thus fixes the obligations of all participating carriers to the extent that the terms of the bill of lading are applicable and valid.'" A.M. Collins & Co. v. Panama R. Co., 197 F.2d 893, 897 (5th Cir. 1952) (internal citations omitted). The bill of lading also incorporates the laws and regulations in effect at the time. Siemens Power Transmission & Distrib., Inc. v. Norfolk S. R.R. Co., 420 F.3d 1243, 1251 (11th Cir. 2005) (internal citations omitted) ("'It is well settled that '[t]he laws in force at the time of the making of a contract enter into and form a part of the contract as if they were expressly incorporated into it.'").

Allied's bill of lading included a provision that stated in part, "As a condition precedent to recovery, a claim for any loss or damage, injury or delay must be filed in writing with carrier within (9) months after delivery to consignee. . . ." (Doc. 24-6 at 7-8.) The Carmack Amendment permits carriers to place a nine-month limit on claims,[9] and federal regulations issued under the Carmack Amendment govern how carriers must process those claims.[10] Federal regulations require shippers to promptly investigate claims. 49 C.F.R. § 1005.4. To facilitate a prompt investigation, federal regulations also require shippers like Bishop to meet three minimum filing requirements when making a claim. 49 C.F.R. § 1005.2(b). First, the claim must contain facts "sufficient to identify the baggage or shipment" of property. Second, the claim must assert liability for alleged loss, damage, injury, or delay. Third, the shipper must

---

[9] 49 U.S.C. §14706(e)(1).

[10] 49 C.F.R. § 1005.1 ("The regulations set forth in this part shall govern the processing of claims for loss, damage, injury, or delay to property transported or accepted for transportation, in interstate or foreign commerce, by each railroad, express company, motor carrier, water carrier, and freight forwarder . . . subject to the Interstate Commerce Act.")

make a claim for payment of a specified or determinable amount of money.  Id.

The Eleventh Circuit has held that the minimum filing regulations "should be interpreted liberally in light of its purpose, which is to provide the carrier adequate notice of the claim so that it can conduct an independent investigation of the damage, not to relieve the carrier of liability." Siemens Power Transmission & Distrib., Inc., 420 F.3d at 1245.  "[T]he sufficiency of claims should be judged 'in a practical way' in light of the claims' purpose: securing reasonable notice for the carrier so that it can conduct an independent investigation." Id. at 1251.  The Eleventh Circuit held that the regulations "appear to call for no more information that one ordinarily would expect a claim for damages to contain" and only requires enough information to make the carrier's investigation "neither onerous nor unreasonable."  Id. at 1252 (internal citations and quotations omitted).[11]

In this case, Allied did not challenge the fact that Bishop's claim allowed Allied to determine the amount of Bishop's claim, satisfying the third prong of 49 C.F.R. § 1005.2(b).[12] Nor did Allied challenge the second requirement of 49 C.F.R. § 1005.2(b) that Bishop asserted Allied's liability.  Instead, Allied pointed to the terms of the bill of lading that require that "a claim for any loss or damage, injury or delay must be filed in writing with carrier within nine months after delivery."  It is undisputed that Bishop filed a claim for loss in December 2007, within nine months of delivery.  The claim listed damage to both specific items and, more

---

[11] In Siemens, the Eleventh Circuit found that a claim for a range of $700,000 to $800,000 satisfied the regulation's third requirement that the shipper make a claim for a "determinable amount of money" under 49 C.F.R. § 1005.2(b).

[12] Since the deadline to file dispositive motions has passed, Allied is now barred from making such an argument.

generally, to boxes that contained damaged goods. Moreover, the claim stated that damages were "to be determined." In its motion, Allied argued that Bishop cannot recover for any items not specifically listed on the claim within nine months of delivery. Bishop countered that the words "to be determined" on the Statement of the Claim served as a catch-all, putting future determinations within the statement that was filed within the nine-month deadline.

Regardless of the correct interpretation of Bishop's claim, the Court finds that terms of the bill of lading did not require Bishop to enumerate every single item damaged within a shipment—down to each piece of silverware. Instead, the bill of lading only required Bishop to make "a claim" for any loss or damage. In addition, 49 C.F.R. §1.005(2)(b) only required that Bishop's claim contain "facts sufficient to identify the baggage or shipment." The regulations do not require facts sufficient to identify each and every item within a shipment or contained within a baggage.

Moreover, the Court must interpret the regulation liberally in light of its purpose, which is to provide the carrier adequate notice of the claim so that it can conduct an independent investigation of the damage, not to relieve the carrier of liability." Siemens Power Transmission & Distrib., Inc., 420 F.3d at 1245. Bishop's claim provided Allied with ample notice that it needed to independently investigate the scope of damage to Bishop's shipment. Bishop's claim included a registration number, the load date of July 25, 2006, her old address in Nashville, the delivery date of November 10, 2007, and her new address in Longboat Key. Bishop's claim also listed at least eight damaged or missing goods. It also indicated that more items than the ones specifically listed might be damaged. The claim referred to "boxes" that contained damaged items. Bishop also wrote on her claim a "+" symbol next to a specific item of damaged

14

furniture; this "+" symbol should have put Allied on notice that the piece of furniture *plus* other pieces were damaged. Bishop also stated in her claim that total damages were "to be determined." All these indications should have led Allied to ask Bishop what additional pieces were damaged and to ask what pieces within the boxes were damaged.

The level of detail in Bishop's claim would have made Allied's investigation "neither onerous nor unreasonable." Siemens Power Transmission & Distrib., Inc., 420 F.3d at 1252. First, Bishop's claim had sufficient detail to allow Allied to identify the shipment and ask Bishop to fill in the details of her claim. Second, if Allied had conducted a prompt investigation of the claim as required by federal regulations, Allied, after speaking with Bishop, should have turned to its own files. In its files, Allied would have found the "Inventory Exception Receipt" form marked in bold and capital letters **DO NOT GIVE TO CUSTOMER**, which Allied kept from Bishop. On the form, Allied's driver listed damage to approximately 14 pieces of furniture. (Doc. 24-6, Marlowe Aff. ¶¶ 3, 4-6.) Thus, Allied would have found that as of November 8, 2007, it actually knew—before Bishop did—of damage to additional pieces beyond those on Bishop's claim.[13]

Thus, Bishop's claim contained sufficient information to satisfy the three requirements of 49 C.F.R. §1.005(2)(b). For these reasons, the Court declines to limit Bishop's claim to the eight pieces of furniture that Allied said Bishop listed on her Statement of Claim.

## **CONCLUSION**

Accordingly, Defendant Allied Van Lines' motion for summary judgment (Doc. 23) is

---

[13] Allied's actual notice of the damage to Bishop's shipment did not relieve Bishop of the obligation to file a sufficient claim under 49 C.F.R. §1.005(2)(b) within nine months. See Farmland Indus., Inc. v. Seaboard Coast R.R. Co., 733 F.2d 1509, 1510 (11th Cir. 1984).

**DENIED**.

Because this case is set for a Pretrial Conference on January 5, 2010, the parties must file their Joint Pretrial Statement by December 31, 2009.

**DONE AND ORDERED** at Tampa, Florida this 18th day of December, 2009.

*Susan C. Bucklew*
SUSAN C. BUCKLEW
United States District Judge

Copies to:
Counsel of Record